UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BARBARA BELLAH,

    Plaintiff,

    v.

AMERICAN AIRLINES, INC., MET LIFE, INTERNATIONAL ASSOCIATION OF MACHINISTS, and DOES 1 through 25, inclusive,

    Defendants.

NO. CIV. S-08-0066 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendant International Association of Machinists' ("IAM") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Barbara Bellah ("Bellah") filed an opposition to defendant's motion. For the reasons stated herein,[1] defendant's motion is GRANTED.

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

# BACKGROUND[2]

Plaintiff Bellah worked as a flight attendant for Trans World Airlines, Inc. ("TWA") from 1985 until 2001. (UF ¶ 1.) On March 6, 1997, the National Mediation Board certified defendant IAM as the exclusive collective bargaining representative for TWA's flight attendants. (UF ¶ 2.) Subsequently, IAM and TWA negotiated a collective bargaining agreement ("CBA"), effective August 1, 1999, that provided for short term disability benefits (the "STD Plan"). (UF ¶¶ 3-4.) The collective bargaining agreement did not provide long term disability benefits to flight attendants. (UF ¶ 5.) However, American Bankers Life Assurance Company ("ABLAC") offered a voluntary Long Term Disability Income Plan (the "LTD Plan") to members of IAM who were employees of TWA. (UF ¶ 6.) Plaintiff enrolled herself in the LTD Plan. (UF ¶ 12.) The LTD Plan was effective from October 1, 1997 through November 30, 2001. (UF ¶ 6.) The parties dispute the role of IAM with respect to plaintiff's long term disability benefits plan.

In early 2001, TWA and American Airlines ("AA") entered into an agreement by which TWA would file for Chapter 11 bankruptcy, AA would purchase nearly all of TWA's assets, and AA would take over TWA's operations. (UF ¶ 13.) AA created a company, TWA-LLC, to continue operations that were once performed by TWA. (UF ¶ 13.) These operations included the STD Plan. (UF ¶ 13.) IAM

---

[2] Unless otherwise noted, the facts herein are undisputed. (See Pl.'s Am. Response to Stmt. Of Undisputed Facts in Supp. of Mot. for Summ. J. ("UF"), filed Feb. 6, 2009.) Where the facts are disputed, the court recounts plaintiff's version of the facts. (See Pl.'s Stmt. of Undisputed Facts ("PF"), filed Feb. 6, 2009.)

2

continued to represent TWA-LLC employees until April 19, 2002. (UF ¶ 13.)

In or around August 2001, plaintiff stopped working because she became disabled. (UF ¶ 14.) Plaintiff received short term disability payments through the STD Plan, which was administered by MetLife for AA. (UF ¶ 16.) The short term disability payments ceased on September 16, 2006. (UF ¶ 16.)

Plaintiff filed a complaint for violation of the Employee Retirement Income Security Act ("ERISA"), Title 29, United States Code Chapter 18, asserting that she is owed long term disability benefits from one or more of the defendants. (Compl., filed Jan. 10, 2008). Defendant IAM filed a motion for summary judgment on May 28, 2008, prior to any discovery in the litigation. (Mem. & Order [Docket #35], filed July 23, 2008). The court granted plaintiff's motion for a continuance of the motion pending additional discovery. (Id.) On February 6, 2009, plaintiff filed an amended opposition to IAM's judgment. (Am. Opp'n [Docket #41], filed Feb. 6, 2009). Subsequently, the parties agreed to an extension for defendant to file a reply, and the court allowed both parties to submit supplemental briefing.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the

nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  See Nissan Fire & Marine, 210 F.3d at 1107.  Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

Defendant IAM moves for summary judgment on the basis that it is not a proper party to this litigation and thus, all claims by plaintiff should be dismissed.  Specifically, IAM asserts that

(1) it is not and was not the benefit plan or plan administrator under ERISA; and (2) that it is not and was not a fiduciary with respect to the long term disability benefits plan. Plaintiff concedes that IAM was not the plan or the plan administrator. However, she asserts that there are triable issues of fact regarding whether IAM was fiduciary.

**A.  Evidentiary Objections**

Federal Rule of Civil Procedure 56(e) provides that an affidavit in support or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Under Federal Rule of Evidence 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." See Bliesner v. Communication Workers of Am., 464 F.3d 910, 915 (9th Cir. 2006) (holding that the district court did not abuse its discretion in striking portions of affidavits on summary judgment that were not based upon personal knowledge); Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (same). Personal knowledge may be inferred from the affiant's position. In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000) (holding that declarant's five-year tenure as manager lent support to his claim of personal knowledge of industry practice); Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000) (noting that a corporate officer could be expected to know the corporation's employees and their tasks); Barthelemy v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (holding

5

that CEO's personal knowledge of various corporate activities could be presumed).

### 1. Declaration of John P. Henderson

Defendant IAM objects to portions of the Amended Declaration of John P. Henderson, plaintiff's counsel, on the basis that the declarant does not have personal knowledge of the matters asserted, and thus would not be competent to testify on the matters stated. Specifically, IAM objects to the statement, "IAM failed to pay the premiums due October 1, 2001 and the policy lapsed as a result of non-payment in November 2001." (Am. Decl. of John P. Henderson ("Henderson Decl."), filed Feb. 6, 2009, ¶ 12.)

Henderson began representing plaintiff in late 2002. (Id. ¶ 2.) He has no personal knowledge of the reasons the policy lapsed or whether IAM had an obligation to pay the premiums on the policy. Rather, this assertion appears to be based upon documents produced in discovery: specifically, the LTD Plan Application and a letter sent to William O'Driscoll, president of ABLAC. The application for the LTD Plan includes the following provision: "The applicant agrees to transmit the total premiums under the group policy to American Bankers Life Assurance Company of Florida at its Home Office when due." (Ex. Q to Henderson Decl. at IAM 1.) However, this provision has hash marks, crossing out the entire three lines of text. The letter to O'Driscoll, dated February 14, 2002, provides, in relevant part: "We are sorry to inform you that the above-referenced group policy lapsed due to non-payment of premium effective November 30, 2001." (Ex. S to Henderson Decl. at AA-Bellah 2655.)

Neither of these documents establish that IAM had an obligation to pay the premiums on the policy or that it was IAM's failure to pay premiums that caused the policy to lapse.  As such, plaintiff cannot support her claim based on the statements of Henderson that IAM had an obligation to pay premiums on the LTD Plan because these statements are made without personal knowledge and Henderson is not competent to testify on the matter.[3]  Defendant's objection is SUSTAINED.

**2. Declaration of Lena McKenzie**

Plaintiff Bellah objects to the Declaration of Lena McKenzie (the "McKenzie Declaration") in its entirety and moves to strike it from the record.  (Mot. to Strike [Docket #51], filed Mar. 5, 2009.)  Specifically, plaintiff asserts that the McKenzie Declaration does not have sufficient foundational facts to support her testimony.  Defendant opposes the motion.

Lena McKenzie ("McKenzie") is the Senior Vice-President of Operations with Continental American Insurance Company ("Continental American") and has worked at Continental American since 1991.  (Decl. of Lena McKenzie ("McKenzie Decl.") [Docket #48], Feb. 27, 2009, ¶¶ 2-3.)  Her responsibilities include the Claims Department, Customer Service Center, New Business, and Client Services operations.  (Id. ¶ 3.)  Continental American is the administrator for ABLAC.  (Id. ¶ 2.)  In 1997, McKenzie was involved in the administration of the LTD Plan.  (Id. ¶ 4.)  The McKenzie Declaration provides information regarding IAM's contract with ABLAC regarding the LTD Plan and the practice of

---

[3] Plaintiff did not file an opposition or otherwise respond to defendant's objections to the Declaration of John P. Henderson.

7

the relevant parties under that contract. McKenzie's personal knowledge about these matters can be presumed from her management position at Continental American, which included claims, customer service, new business, and client services. Moreover, McKenzie attests that she was involved in the administration of the LTD Plan at issue. Therefore, McKenzie's personal knowledge is established both by her involvement in the LTD plan and by the presumption created by her management position. As such, plaintiff's motion to strike is without merit, and plaintiff's objections are OVERRULED.

**B.  Breach of a Fiduciary Duty**

ERISA provides that a fiduciary to a plan "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" is liable to the plan. 29 U.S.C. § 1109(a) (2009). Similarly, a co-fiduciary may also be liable under certain circumstances. 29 U.S.C. § 1105. "In every case charging breach of an ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." Pegram v. Herdich, 530 U.S. 211, 226 (2000). For purposes of ERISA,

> a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or he has an discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

"Fiduciary liability depends not on how one's duties are formally characterized in an ERISA plan, but rather upon

functional terms of control and authority over the plan." <u>CSA 401(K) Plan v. Pension Prof'ls, Inc.</u>, 195 F.3d 1135, 1138 (9th Cir. 1999) (citing <u>IT Corp. v. Gen. Am. Life Ins.</u>, 107 F.3d 1415, 1419 (9th Cir. 1997)). "A person's 'actions, not the official designation of this role, determines whether he enjoys fiduciary status,' regardless of what his agreed-upon contractual responsibilities may be." <u>Id.</u> (quoting <u>IT Corp.</u>, 107 F.3d at 1418). Several courts have held that status as a policy holder alone does not establish a fiduciary relationship for purposes of ERISA. See <u>Novak v. Regions Mortgage</u>, No. 1:05-cv-101, 2006 WL 208577, at *3 (E.D. Tenn. Jan. 25, 2006) (employer-policy holder is an improper party because it exerted no control over the administration of the plan); <u>Muller v. First Unum Life Ins. Co.</u>, 166 F. Supp. 2d 706, 708, 710 (N.D.N.Y. 2001) (even though trust was policy holder, plan administrator, and agent for service of process, it was not a fiduciary because it did not exercise any discretionary authority or control over insurance policies); <u>Georgas v. Kreindler & Kreindler</u>, 41 F. Supp. 2d 470, 474 (S.D.N.Y. 1999) (an employer-policy holder of a disability plan was not a fiduciary and owed no fiduciary duty).

In this case, defendant presents evidence that the LTD plan was a group insurance policy for which IAM was the policy holder. (UF ¶ 7.) Defendant also presents evidence that IAM did not appoint any fiduciaries to the LTD Plan, had no authority or discretion over the LTD Plan's assets or benefits, and had no involvement in processing claims made under the LTD Plan. (UF ¶¶ 8-10.)

/////

Plaintiff asserts that IAM agreed to pay the premiums for the LTD Plan, and consequently, must have "controlled, supervised, and administered witholdings from flight attendants." (Pl.'s Am. Opp'n [Docket #41], filed Feb. 6, 2009, at 5.) Plaintiff also argues that because it was in charge of payment, it exercised its discretion to terminate the LTD Plan through non-payment. However, as set forth above, plaintiff has no admissible evidence to support these assertions.

In contrast, defendant presents evidence that on the Application for Group Disability Income Insurance, dated October 1, 1997 and submitted by IAM to ABLAC, the paragraph pertaining to transmittal of total premiums by the applicant was crossed out and did not apply to the policy. (McKenzie Decl. ¶ 5.) Premiums were paid by TWA directly to ABLAC, using funds which TWA withheld from individual employee paychecks. (Id. ¶ 6.) IAM was not involved in these transactions, nor in the transmission of withheld funds to ABLAC. (Id. ¶ 7; UF ¶ 11.) After TWA filed for bankruptcy protection in 2001, premium payments to ABLAC stopped, and the LTD Plan was terminated. (McKenzie Decl. ¶ 8.) Accordingly, the undisputed evidence demonstrates that IAM had neither discretionary authority or control regarding the management of the LTD Plan's assets nor discretionary authority or responsibility in the administration of the LTD Plan. As such, IAM was not a fiduciary and owed plaintiff no duty under ERISA.[4]

---

[4] Plaintiff also contends that IAM had a duty to inform her that it intended to allow the plan to lapse by non-payment. The sole case relied upon plaintiff in her brief, Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1302-03 (3d Cir. 1993), does not support her argument. The

10

**CONCLUSION**

For the foregoing reasons, defendant IAM's motion for summary judgment is GRANTED.[5]

IT IS SO ORDERED.

DATED: April 22, 2009.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

Bixler court's holding was based upon a finding that there was a triable issue of fact regarding whether the defendant was acting in a fiduciary capacity with respect to the conduct alleged in the complaint. Id. In this case, plaintiff has failed to present any admissible evidence that raises a triable issue of fact. Furthermore, the Bixler court also declined to decide whether a breach of fiduciary duty occurred by the defendant's non-disclosure; rather, the court found triable issues. Id. at 1302-03.

[5] Because it finds that defendant IAM is not a fiduciary, the court does not reach the merits of defendant's other arguments.