UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BARBARA BELLAH,

     Plaintiff,

    v.

AMERICAN AIRLINES, INC., MET
LIFE, INTERNATIONAL
ASSOCIATION OF MACHINISTS,
and DOES 1 through 25,
inclusive,

     Defendants.

_____/

NO. CIV. S-08-0066 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendants American
Airlines, Inc.'s ("AA") and Met Life's motion for summary
judgment pursuant to Federal Rule of Civil Procedure 56.
Plaintiff Barbara Bellah ("plaintiff" or "Bellah") opposes
defendants' motions.  The court heard oral argument on the
motions on August 21, 2009.  For the reasons stated herein,
defendants' motions are GRANTED.

1                                    **BACKGROUND**[1]

2        Plaintiff Bellah worked as a flight attendant for Trans

3   World Airlines, Inc. ("TWA") from 1985 until 2001.  (MUF ¶ 1; AUF

4   ¶ 1.)  In 1997, during Bellah's TWA employment, International

5   Association of Machinists ("IAM"), the TWA Flight Attendant's

6   Union, applied, negotiated, and contracted for Long Term

7   Disability ("LTD") benefits for its flight attendant members from

8   a company known as American Bankers Life Assurance Company

9   ("ABLAC").[2]  (DF ¶ 2.)  Plaintiff enrolled herself in the ABLAC

10  LTD Plan, which was effective from October 1, 1997 through

11  November 30, 2001.  (See AUF ¶ 13.)

12       TWA filed for Title 11 Bankruptcy on January 10, 2001.  (AUF

13  ¶ 2.)  Defendant AA purchased certain of TWA's assets in April

14  2001 and incorporated those assets into a company known as TWA

15  LLC.  (MUF ¶ 2; AUF ¶¶ 3, 5.)  AA did not purchase or assume

16  TWA's employee benefit plans; the Bankruptcy Court Order

17  approving the sale specifically held that the asset transfer was

18

19       [1]     Unless otherwise noted, the facts herein are
    undisputed.  (See Pl.'s Response to Def. Met Life Stmt. of
20  Undisputed Facts in Supp. of Mot. for Summ. J. ("MUF"), filed
    Aug. 2, 2009; Def. AA's Reply to Pl.'s Response to Stmt. of
21  Undisputed Facts in Supp. of Mot. for Summ. J. ("AUF"), filed
    Aug. 14, 2009.)  Where the facts are disputed, the court recounts
22  plaintiff's version of the facts.  (See Pl.'s Stmt. of Disputed
    Facts ("DF"), filed Aug. 2, 2009.)  Because plaintiff generally
23  asserts that certain facts are "disputed" without any
    explanation, the court looks to the underlying evidence to
24  determine whether any genuine issue of fact exists.

25       Defendant AA filed objections to plaintiff's evidence.
    Plaintiff's declarations are rife with hearsay and statements
26  unsupported by proper foundation.  The court relies only on
    admissible evidence herein.  See Orr v. Bank of Am., NT & SA, 285
27  F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider
    admissible evidence in ruling on a motion for summary
28  judgment.").

         [2]     ABLAC is not named as a defendant in this action.

                                      2

free and clear of all employee related claims, known or unknown, accrued up to the date of sale.  (AUF ¶ 4.)

Employees of TWA who continued working after AA acquired the TWA assets became employees of TWA LLC.  (AUF ¶ 5.) Subsequently, AA created a new employee welfare benefit plan, the TWA Airlines LLC Universal Welfare Benefit Plan (the "Plan") for the employees of TWA LLC and for TWA employees who were disabled and receiving disability benefits from TWA's universal welfare benefit plan.  (MUF ¶ 2; AUF ¶ 6.)  The TWA LLC Plan was a "mirror image" plan to TWA's universal welfare benefit plan and was in existence from April 9, 2001 through December 31, 2001. (AUF ¶ 8.)  Under the TWA LLC Plan, Short Term Disability ("STD") benefits were available for up to five years to flight attendants who met all terms and conditions.  (MUF ¶ 3.)  However, LTD benefits were available only to pilots, management, and flight dispatch officers; flight attendants were not eligible for LTD benefits under the TWA LLC LTD Plan.  (MUF ¶ 3; AUF ¶ 12.)  In December 2001, plaintiff filled out an "Attending Physician Statement" regarding her diagnosis and treatment; none of the boxes indicating (1) STD/Salary Continuance; (2) LTD; or (3) Unified Disability STD/LTD were checked.  (DF ¶ 9; Ex. S to Bellah Decl. at AA-Bellah 1636.)

In November 2001, the ABLAC LTD policy that had been offered by IAM lapsed due to non-payment.[3]  (DF ¶ 5.)  Plaintiff asserts

---

[3]   Plaintiff asserts that the policy lapsed due to non-payment by IAM.  However, the court previously found that defendant IAM presented undisputed evidence that TWA, not IAM, was responsible for submitting payments to ABLAC, and that IAM was not a fiduciary under ERISA.  (Mem. & Order, filed Apr. 22, 2009, at 10.)

1  that neither TWA, TWA LLC, AA, IAM, nor MetLife informed Bellah

2  that the ABLAC policy was lapsing.  (DF ¶ 7.)

3      On January 1, 2002, active TWA LLC employees became AA

4  employees for purposes of pay and benefits, and they became

5  participants under AA-sponsored health and welfare benefit plans.

6  (AUF ¶ 8.)  Those TWA employees who were disabled and receiving

7  benefits from the STD coverage in the TWA LLC Plan continued to

8  receive disability benefits if they met the requirements for

9  coverage and benefits.  (AUF ¶ 8.)  AA offered an LTD Plan to

10  Flight Attendants.  However, the Plan contained the following

11  exclusions and limitations:

12      If this coverage becomes effective but you are not at
        work because of a disability, you are not covered under
13      this plan until you return to work and deductions are
        taken from your pay.
14
        You are not covered under this plan for a disability if
15      you received medical care or treatment for the
        disability within the three months before the effective
16      date of coverage.

17  (Ex. A to Decl. of Ana M. Martinez in Supp. of AA's Mot. for

18  Summ. J. ("Martinez Decl."), filed June 18, 2009, at 91).  In

19  other words, LTD coverage was not available to flight attendants

20  under AA's LTD Plan unless they (1) were at or returned to work

21  and (2) had not been on disability or received medical treatment

22  for a disability in the prior three months.  (Decl. of Deborah L.

23  Jameson in Supp. of AA's Mot. for Summ. J. ("Jameson Decl."),

24  filed June 18, 2009, ¶ 12.)

25      Bellah worked for TWA LLC as a flight attendant from April

26  2001 until August 2001, when she become totally disabled.  (DF ¶

27  1.)  Plaintiff's last actual work day was August 6, 2001 when she

28  was employed by TWA LLC.  (AUF ¶ 9.)  She submitted a claim to

4

1  receive STD benefits under the TWA LLC Plan.  (AUF ¶ 9.)  The

2  Claims Administrator, MetDisability, determined Bellah's date of

3  disability to be September 17, 2001, and approved the payout of

4  benefits.  (AUF ¶ 9.)  Under the TWA LLC Plan, no further

5  benefits were payable after September 16, 2006.  (AUF ¶ 11.)

6      AA asserts that under the provisions of its LTD Plan,

7  plaintiff never became a participant because she was not actively

8  working on January 1, 2002.[4]  (AUF ¶ 9.)  Further, Bellah never

9  returned to work after August 2001, earned no wages as an AA

10  employee, and had no deductions taken from her pay.  (AUF ¶ 15.)

11  Plaintiff was included in a reduction of force that included

12  hundred of Flight Attendants on January 1, 2003; she was never

13  rehired.  (AUF ¶ 24.)

14      In December 2001, American Airlines Human Resources sent a

15  letter to plaintiff, informing her that she was currently on a

16  Personal Medical Leave of Absence, which would convert to a Sick

17  Leave of Absence on January 1, 2002.  (Ex. AA to Decl. of Barbarh

18  Bellah in Opp'n to Mot. for Summ. J. ("Bellah Decl."), filed Aug.

19  2, 2009.)  The letter further informed that for the first two

20  years of her leave, she was eligible for benefits at the same

21

22      [4]    Plaintiff submits Exhibit CC, a document entitled

23  "Rules and Instructions Sheet for Sick, Maternity, Injury on Duty
   Leaves of Absence for Flight Attendants."  This document is not

24  mentioned or authenticated by any of plaintiff's declarations in
   support of her opposition.  Because no foundation was laid, the

25  document was not authenticated, and it is unclear what this
   document is, Exhibit CC is inadmissible.

26      Plaintiff also asserts that under the AA LTD Plan, she

27  became eligible for coverage on the effective date of January 1,
   2002, because she was not actually at work due to a health

28  conditions.  (DF ¶ 26.)  None of the evidence cited by plaintiff
   supports this assertions.  Indeed, the AA LTD Plan expressly
   contradicts this assertions.  (Ex. A to Martinez Decl. at 91.)

cost as an active employee; at the end of those two years, she would be offered COBRA.  (Id.)  While Bellah was on sick leave, she selected certain benefits during an open enrollment period. (AUF ¶ 16.)  Plaintiff was eligible for enrollment for benefits including medical insurance, supplemental medical insurance, dental insurance, and voluntary personal accident insurance ("VPAI").  (AUF ¶ 16.)  Plaintiff submits a copy of the benefits premium payment itemized cost from December 20, 2001.  (Ex. U to Decl. of Barbara Bellah ("Bellah Decl."), filed Aug. 2, 2009.) The Confirmation Statements lists "Long Term Disability" at a Monthly Contribution cost of $20.84.  (Id.)  The total for all benefits confirmed was $94.30, for which plaintiff submitted a check that was received in March 2002.  (Id.; Ex. V to Bellah Decl.; AUF ¶ 19.)

However, AA presents evidence that because plaintiff was not entitled to LTD benefits, her payments were never allocated for such benefits.  Specifically, AA presents evidence that the check for $94.30 was not received and credited until March 7, 2002, even though Bellah's obligation to pay for benefits began on January 1, 2002.  That payment was allocated between medical benefits, supplemental medical, dental, and VPAI; because no payments had been received in January or February 2002, a balance of $119.54 remained after the check was applied.  (AUF ¶ 19.) Plaintiff continued to make payments on May 16, 2002, June 24, 2002, August 5, 2002, and January 9, 2003.  (AUF ¶¶ 20-23.) Funds were allocated to medical, supplemental medical, dental, and VPAI; no funds were allocated to an LTD Plan, and a balance always remained due.  (AUF ¶¶ 20-23.)

At times during MetLife's administration of plaintiff's STD benefits, MetLife personnel referred to plaintiff's claim as one for LTD benefits.  (MUF ¶ 6.)  Indeed, in at least one conversation with plaintiff's counsel, MetLife personnel referred to plaintiff's benefits as LTD benefits; the representative also stated that the maximum duration under the Plan was five years, consistent with plaintiff's STD Plan.  (MUF ¶ 7.)  However, on September 24, 2002, a MetLife representative informed plaintiff that she did not have an LTD Plan, and on February 10, 2003, a MetLife representative informed plaintiff's counsel the same. (MUF ¶ 9; ADMIN 248, 259.)  Subsequently, though, MetLife sent a letter to Bellah on April 5, 2005, informing her that LTD benefits would "continue under the any occupation provision of the plan" and would terminate when she was able to return to work, no longer disabled, or when she turned 65.  (MUF ¶ 8; ADMIN 334.)

On August 29, 2006, MetDisability notified plaintiff via written correspondence of the upcoming termination of her STD benefits.  (AUF ¶ 10; MUF ¶ 10.)  It specifically advised Bellah that "you will reach your maximum benefits duration date on September 16, 2006 at which time your STD benefits will cease to be payable," and that the claim file would be closed.  (AUF ¶ 10; MUF ¶ 10.)  By letter dated October 5, 2006, plaintiff's attorney sought confirmation that MetLife intended "to honor Bellah's LTD benefits" as previously indicated in the April 5, 2005 letter. By letter dated October 24, 2006, MetLife informed plaintiff and plaintiff's counsel that the April 5, 2005 letter included incorrect information and that plaintiff was only eligible for

STD benefits through AA and MetLife.  (MUF ¶ 12; ADMIN 311-13.)
By letter dated November 21, 2006, plaintiff's counsel requested
a second review of MetLife's determination that Bellah was not
entitled to LTD benefits through MetLife; counsel enclosed copies
of Bellah's paystubs from December 2000 and January 2001[5] that
reflected deductions taken for "FA LTD."  (MUF ¶ 13; ADMIN 309-
10.)  These deductions from plaintiff's pay were for the optional
LTD coverage offered to TWA flight attendants by ABLAC.  (MUF ¶
14.)  MetLife had no involvement with or connection to the LTD
Plan insured by ABLAC.  (MUF ¶ 15.)[6]  Upon second review, MetLife
upheld its determination that Bellah was not entitled to LTD
benefits on the ground that the claim was decided and paid in
accordance with the applicable STD Plan.  (MUF ¶ 16.)  Plaintiff
appealed to AA, which upheld MetLife's decision on the basis that
the claim was processed in accordance with the applicable STD
Plan.  (MUF ¶ 17.)  By letter dated May 25, 2007, Deborah
Jameson, on behalf of AA specifically noted:

> LTD coverage was NOT sponsored by TWA, Inc.  If a TWA
> Flight Attendant elected to purchase LTD coverage
> through his/her union (IAM), TWA acted only as the
> premium collector (authorizing deductions from its
> paychecks), passing such premium contributions on to
> the LTD carrier.  The LTD payroll deductions referenced
> in your letter represent the optional LTD coverage Ms.
> Bellah purchased though the IAM during her employment
> with TWA.  Such LTD deduction did not represent LTD
> coverage under the TWALLC Plan.  As such, your request
> for payment of LTD benefits under the TWALLC Plan is
> denied.  Should you wish to pursue this matter on Ms.
> Bellah's behalf, you should contact the IAM.

---

[5]     Based upon these dates, the paystubs reflected payments
made to plaintiff before and immediately after TWA filed for
bankruptcy and before AA acquired any assets.

[6]     Plaintiff asserts that this fact is disputed, but
offers no competent evidence to raise a triable issue of fact
that MetLife was involved in the LTD Plan insured by ABLAC.

1  (Ex. B. to Supp. Decl. of Deborah L. Jameson ("Supp. Jameson.
2  Decl."), filed Aug. 14, 2009, at 5-6.)

3      Plaintiff filed a complaint for violation of the Employee
4  Retirement Income Security Act ("ERISA"), Title 29, United States
5  Code Chapter 18, asserting that she is owed long term disability
6  benefits from AA, MetLife, and/or IAM.  (Compl., filed Jan. 10,
7  2008).  On April 22, 2009, the court granted defendant IAM's
8  motion for summary judgment on the basis that plaintiff failed to
9  raise a triable issue of fact that IAM was a fiduciary for
10  purposes of liability under ERISA.  Subsequently, defendants AA
11  and MetLife filed motions for summary judgment.

12                              **STANDARD**

13      The Federal Rules of Civil Procedure provide for summary
14  judgment where "the pleadings, the discovery and disclosure
15  materials on file, and any affidavits show that there is no
16  genuine issue as to any material fact and that the movant is
17  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);
18  see <u>California v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998).
19  The evidence must be viewed in the light most favorable to the
20  nonmoving party.  See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th
21  Cir. 2000) (en banc).

22      The moving party bears the initial burden of demonstrating
23  the absence of a genuine issue of fact.  See <u>Celotex Corp. v.
24  Catrett</u>, 477 U.S. 317, 325 (1986).  If the moving party fails to
25  meet this burden, "the nonmoving party has no obligation to
26  produce anything, even if the nonmoving party would have the
27  ultimate burden of persuasion at trial."  <u>Nissan Fire & Marine
28  Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

1  However, if the nonmoving party has the burden of proof at trial,

2  the moving party only needs to show "that there is an absence of

3  evidence to support the nonmoving party's case."  <u>Celotex Corp.</u>,

4  477 U.S. at 325.

5       Once the moving party has met its burden of proof, the

6  nonmoving party must produce evidence on which a reasonable trier

7  of fact could find in its favor viewing the record as a whole in

8  light of the evidentiary burden the law places on that party.

9  <u>See</u> <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th

10 Cir. 1995).  The nonmoving party cannot simply rest on its

11 allegations without any significant probative evidence tending to

12 support the complaint.  <u>See</u> <u>Nissan Fire & Marine</u>, 210 F.3d at

13 1107.  Instead, through admissible evidence the nonmoving party

14 "must set forth specific facts showing that there is a genuine

15 issue for trial."  Fed. R. Civ. P. 56(e).

16                           **ANALYSIS**

17      Defendant AA moves for summary judgment on the basis that AA

18 did not at any time offer to provide plaintiff LTD coverage and

19 that she was expressly ineligible for LTD coverage under the

20 plan, unless and until she returned to duty; thus, defendant AA

21 asserts that it has no liability for the non-payment of LTD

22 benefits under ERISA.  Similarly, defendant MetLife moves for

23 summary judgment because it had no connection to any LTD plan

24 under which plaintiff could recover benefits.  Plaintiff argues

25 that AA's LTD Plan confered benefits on former TWA employees on

26 disability without requiring requalification for benefits and

27 that MetLife is similarly liable as administrator of the AA LTD

28 Plan.

                                10

1       Pursuant to 29 U.S.C. § 1132(a)(1)(B), a civil action may be

2  brought by a participant to recover benefits due to him or her

3  under the terms of an ERISA Plan.  The interpretation of an ERISA

4  plan is governed by federal common law.  <u>Pilot Life Ins. Co. v.</u>

5  <u>Dedeaux</u>, 481 U.S. 41, 56 (1987); <u>Menhorn v. Firestone Tire &</u>

6  <u>Rubber Co.</u>, 738 F.2d 1496, 1499-1500 (9th Cir. 1983).

7  **A.   Continuance of LTD Benefits Under the Tax Code**

8       Plaintiff argues that Bellah was entitled to benefits under

9  the LTD policy pursuant to relevant provisions of the Internal

10 Revenue Code.  Specifically, plaintiff argues that because Title

11 26 treats parent and subsidiary corporations as a single employee

12 for tax purposes, Bellah was entitled to have her service under

13 TWA LLC treated as service for American.[7]  Defendants argue that

14 because it is undisputed that LTD benefits were not available to

15 plaintiff through TWA or TWA LLC and because the AA LTD Plan

16 explicitly excluded plaintiff from coverage because she was never

17 an active employee after the effective coverage date, Bellah was

18 not entitled to LTD benefits under any plan; they also argue

19 /////

20

21       [7]   There is no evidence that plaintiff ever made a claim
   under ABLAC policy.  AA did not purchase or assume any of TWA's
22 employee benefit plans through the bankruptcy sale.  Further, any
   claim based thereon is barred by the "free and clear" provisions
23 of the Sale Order.  <u>See</u> <u>In re Trans World Airlines, Inc.</u>, 322
   F.3d 283 (3d Cir. 2003) (affirming the authorization of the sale
24 of TWA assets to AA free and clear of claims by the EEOC and a
   plaintiff class suing for sex discrimination in violation of
25 Title VII).  It is also undisputed that the TWA LLC policy did
   not offer or provide LTD benefits to Flight Attendants.
26 Furthermore, plaintiff fails to address the applicability of
   either of these policies in her opposition.  As such, to the
27 extent plaintiff seeks relief under ERISA pursuant to either of
   these policies, defendants are entitled to summary judgment on
28 these claims as there are no "benefits due under the terms of the
   plan."  29 U.S.C. § 1132(a)(1)(B).

1   provisions of the tax code cannot enlarge employee obligations

2   under ERISA.

3       26 U.S.C. § 414(a) provides that "in any case in which the

4   employer maintains a plan of a predecessor employer, service for

5   such predecessor shall be treated as service for the employer."

6   26 U.S.C. § 410(b)(6)(C)(I) provides that if any member becomes

7   or ceases to be a member of a group due to dispositions or

8   acquisitions, the minimum coverage requirements of a trust are

9   treated as having been met under certain circumstances.  Nothing

10  in these sections explicitly mentions enlargement of benefits

11  under ERISA based upon the Tax Code.

12      While the Tax Code and Treasury regulations govern tax

13  qualification of ERISA plans, such provisions do not "amplify the

14  substantive requirements of ERISA." Bronk v. Mountain States

15  Telephone & Telegraph, Inc., 140 F.3d 1335, 1339 (10th Cir.

16  1998).  In Abraham v. Exxon Corp., 85 F.3d 1126 (5th Cir. 1996),

17  the plaintiffs argued that their exclusion from the employer's

18  benefits plan violated ERISA and certain Treasury regulations.

19  The Fifth Circuit held that Treasury regulations do not create

20  substantive rights under ERISA.  The Abraham court explained that

21  Treasury regulations

22          purport to do no more than determine whether a plan is
            a qualified tax plan.  Failure to meet those
23          requirements of those regulations results in the loss
            of a beneficial tax status; it does not permit a court
24          to rewrite the plan to include additional employees.

25  Id. at 1130.  The Fifth Circuit acknowledged that in some

26  instances, ERISA expressly incorporated provisions of the Tax

27  Code and Treasury regulations; however, where such inclusion was

28  not explicit, the court was not inclined to find implicit

                                    12

1  incorporation or modification.  Id.; see Edes v. Verizon
2  Communications, Inc., 288 F. Supp. 2d 55, 63 (D. Mass. 2003)
3  ("Most courts have rejected the argument that the Treasury
4  regulations create a right to rewrite an ERISA plan."); cf.
5  Burrey v. Pacific Gas & Elec. Co., 159 F.3d 388 (9th Cir. 1998)
6  (considering Internal Revenue Code definitions of employees to
7  determine whether employees had standing to bring an ERISA claim,
8  not whether such employees were entitled to benefits under the
9  plan).

10        Similarly, in Bronk, the Tenth Circuit held that 26 U.S.C.
11  §§ 410 and 414 did not broaden coverage to include employees who
12  did not meet a plan's minimum age and service requirements.  140
13  F.3d at 1339.  The Bronk court noted that to hold otherwise would
14  render the plan section meaningless because it would mean that
15  "all employees who satisfy ERISA's minimum participation
16  requirements and meet the definition of common law employees must
17  be included within a plan"; as such, "[n]o employees could ever
18  be excluded under that section of the plan.  Id.  Therefore, the
19  Tenth Circuit concluded that ERISA was not implicitly modified by
20  the Internal Revenue Code or Treasury regulations.  Id.;
21  Montesano v. Xerox Corp., 117 F. Supp. 2d 147, 162 (D. Conn.
22  2000) aff'd in relevant part, 256 F.3d 86, 89 (2d Cir. 2001); see
23  also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (1983)
24  ("ERISA does not mandate that employers provide any particular
25  benefits . . . .").  But see Renda v. Adam Meldrum & Anderson
26  Co., 806 F. Supp. 1071, 1082 (W.D.N.Y. 1992) (holding that
27  regulations "are useful for extracting subtler shades of meaning
28  /////

13

necessary to paint a more detailed portrait of an individual's substantive rights under ERISA").

The court finds the reasoning of <u>Abraham</u> and <u>Bronk</u> persuasive.  If Congress intended employee rights to be expanded under 26 U.S.C. §§ 410(b)(6)(C)(I) and 414(a)-(b), "it would have expressly so provided."  <u>Brock</u>, 140 F.3d at 1339.  However, it did not do so.  As such, the court concludes that the tax qualification provisions of the Internal Revenue Code do not modify a LTD benefit plan to mandate inclusion of employees whom it has permissibly excluded.  <u>See</u> <u>id.</u>  Moreover, even if defendants' exclusion of plaintiff violated the Internal Revenue Code, plaintiff has failed to submit any authority that would permit the court to rewrite the Plan.  <u>See</u> <u>Edes</u>, 288 F. Supp. 2d at 64 ("While [the employer's] classification may well be unreasonable and arbitrary under the Treasury regulations, . . . this failure to comply . . . does not permit the Court to rewrite the plan.").  Accordingly, plaintiffs' argument her right to benefits under the AA LTD Plan is compelled by 26 U.S.C. §§ 410(b)(6)(C) and 414 is unpersuasive.

**B.    Continuance of LTD Benefits Due to Prior Service**

Plaintiff also argues that she is entitled to benefits under the AA LTD Plan because, in December 2001, AA represented that she would be entitled to such benefits.  In support of this assertion, plaintiff proffers a letter from AA Human Resources stating that for the first two years of her sick leave, she was eligible for benefits at same cost as an active employee, and thereafter she would be offered COBRA.  (Ex. AA to Bellah Decl.)  Plaintiff asserts that this letter supports her assertion that

14

1  she would be "credited and in essence 'grandfathered in' for

2  prior service when the new benefits package became effective on

3  January 1, 2002." (Pl.'s Opp'n, filed Aug. 2, 2009, at 10.)

4  Plaintiff admits that the letter does not mention the word

5  "grandfathered." (Id. at 9.)  Nor does the letter provide that

6  plaintiff would be considered an active employee while on a Sick

7  Leave of Absence; rather, the letter merely provides that "the

8  company will provide benefits for you at active rates." (Ex. AA.

9  to Bellah Decl.)  Furthermore, there is no mention of the AA LTD

10  Policy or any modification of the plain language of the LTD

11  Policy that excluded coverage for employees not at work until

12  they returned to work and deductions were taken from their pay.

13  Accordingly, plaintiffs' argument that AA "grandfathered" her

14  prior service such that she was an eligible active employee under

15  the AA LTD Plan is unpersuasive.

16  **C.   Equitable Estoppel**[8]

17      Alternatively, plaintiff argues that she can recover on an

18  equitable estoppel theory.

19      "An ERISA beneficiary may recover benefits under an

20  equitable estoppel theory upon establishing a material

21  misrepresentation, reasonable and detrimental reliance upon the

22  representation and extraordinary circumstances." Piscotts v.

23  Teledyne Indus., 91 F.3d 1326, 1331 (9th Cir. 1996) (citing In Re

24  Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 58 F.3d 896,

25  907 (3d Cir. 1995)).  Furthermore, the Ninth Circuit has imposed

26  two prerequisites to a claim for equitable estoppel under ERISA.

27

28      [8]   Plaintiff also argues that she is eligible under the AA
     LTD Plan based upon representations made by the AA and MetLife.
     The court addresses those arguments herein.

15

1   Id.  "First, the provisions of the plan at issue must be

2   ambiguous such that reasonable persons could disagree as to their

3   meaning or effect."  Id. (citing Greany v. W. Farm Bureau Life

4   Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992).  Second, material

5   oral representations must have been made to the employee

6   regarding the interpretation of the plan.  Id.  However, "[a]

7   plaintiff cannot avail himself of a federal ERISA estoppel claim

8   based upon statements of a plan employee which would enlarge his

9   rights against the plan beyond what he could recover under the

10  unambiguous language of the plan itself."  Greany, 973 F.2d at

11  822.

12      The undisputed evidence submitted in this case establishes

13  that AA's LTD Plan, which was administered by MetLife, was not

14  ambiguous and clearly excluded plaintiff from coverage.  The Plan

15  explicitly provided that an employee not at work because of a

16  disability at the time coverage becomes effective is not covered

17  for LTD benefits "until you return to work and deductions are

18  taken from your pay."[9]  (Ex. A to Martinez Decl. at 91.)

19  Plaintiff's equitable estoppel argument seeks a determination

20  that she is entitled to LTD coverage under the plan even though

21  she was on disability leave at the time coverage became

22  effective, January 1, 2002, and despite the fact that she never

23  returned to work.  Such a determination would enlarge her rights

24  beyond what is allowed under the unambiguous language of the

25  Plan.

26

27

28      [9]   The court finds unavailing plaintiff's argument that
    the language of the Plan was ambiguous based upon the Internal
    Revenue Code sections, as discussed *supra*.

1    Further, plaintiff's contention that she paid for LTD

2  disability benefits after January 1, 2002, is belied by the

3  undisputed evidence.  While plaintiff may have believed she was

4  paying for LTD payments, the undisputed evidence reveals that the

5  payments Bellah submitted were only applied to her medical

6  benefits, supplemental medical, dental, and VPAI; indeed, her

7  payments did not even fully cover these benefits.[10]

8    Moreover, plaintiffs' assertion that MetLife compelled her

9  to apply for Social Security disability benefits, which was

10 solely a function of the LTD Plan, mischaracterizes the facts.

11 MetLife presents evidence that the TWA LLC STD Plan provided:

12       If you are covered under the Federal Social Security
         Act, your weekly disability income will be reduced by
13       an amount equal to the amount you and your Family
         Members would receive were you receiving periodic cash
14       payments under Social Security, unless you submit proof
         . . . that you have applied for Social Security
15       benefits and they are not payable.

16 (ADMIN 117.)  As such, Social Security disability benefits

17 affected both the AA LTD Plan as well as the STD Plan under which

18 plaintiff received benefits for five years.

19    While the court agrees that plaintiff's communications with

20 MetLife created a less than clear picture of her coverage, this

21 does not alter the standards this court must apply.  The language

22 of the AA LTD Plan and its exclusions were clear and unambiguous.

23 Therefore, MetLife's subsequent miscommunications, though

24 

25    [10]    Moreover, federal courts have explicitly noted that
   COBRA continuation rights do not apply to disability insurance.
26 Austell v. Raymond James & Assocs., Inc., 120 F.3d 32, 33 (4th
   Cir. 1997); Moffitt v. Whittle Communications, L.P., 895 F. Supp.
27 961, 968 n.6 (E.D. Tenn. 1995); Burgess v. Unum Life Ins. Co., No
   C-95-0229, 1995 WL 581151, at *3 n.3 (N.D. Cal. Sept. 25, 1995)
28 ("Long-term disability coverage is explicitly exempted from
   COBRA, since it is not considered a 'medical benefit' defined by
   COBRA.").

troubling, are irrelevant.  Moreover, these miscommunications
occurred well after the filing date for any claim for LTD
benefits with ABLAC.[11]  As such, plaintiff did not suffer any
prejudice as a result of MetLife's statements.

Therefore, because the court finds that granting the
equitable relief sought by plaintiff would enlarge benefits
beyond those granted by the clear, unambiguous language of the AA
LTD Plan, plaintiff's argument that she is entitled to equitable
estoppel is unpersuasive.

Accordingly, defendants' motions for summary judgment are
GRANTED.

**C.  Attorneys' Fees**

Defendant MetLife seeks attorneys fees and costs pursuant to
28 U.S.C. § 1927.  Specifically, MetLife argues that it is
entitled to fees because plaintiff was clearly not a participant
in the plan at issue.

Section 1927 allows the court to award fees against "any
attorney . . . who so multiplies the proceedings in any case
unreasonably and vexatiously."  This section is not specific to
any statute, but applies to any civil suit in federal court.
Hyde v. Midland Credit Mgmt., Inc., 567 F. 3d 1137, 1141 (9th
/////

---

[11]    Under the ABLAC LTD Plan, a claimant must give notice
of the claim to ABLAC within 20 days of loss and must provide
proof of disability within 90 days.  Because plaintiff's last day
of work was August 6, 2001, absent any applicable exceptions,
none of which have been argued by plaintiff, proof of disability
was required to be made to ABLAC no later than November 5, 2001.
(See Ex. C to Decl. of Robert Haynes [Docket #22], filed May 28,
2008.)  The earliest communication pointed to by plaintiff in
which MetLife referred to LTD benefits was a letter dated March
31, 2003.  (Ex. B to Decl. of John P. Henderson in Opp'n to Mot.
for Summ. J. ("Henderson Decl."), filed Aug. 2, 2009.)

1  Cir. 2009).  Further, the statute "explicitly provides for
2  remedies against offending *attorneys*."  Id.

3      Attorneys fees under § 1927 are appropriate if an attorney's
4  conduct is in bad faith; recklessness satisfies this standard.
5  B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1107 (9th Cir. 2002);
6  Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998) ("An award of
7  sanctions under 28 U.S.C. § 1927 or the district court's inherent
8  authority requires a finding of recklessness or bad faith.").
9  The Ninth Circuit has also required a finding of subjective bad
10 faith, "which is present when an attorney knowingly or recklessly
11 raises a *frivolous* argument, or argues a meritorious claim for
12 the purpose of harassing an opponent."  Id. (emphasis in
13 original) (quoting In re Keegan Mgmt. Co., Sec. Lit., 78 F.3d
14 431, 436 (9th Cir. 1996)).

15     Based upon the submissions of the parties in this case, the
16 court does not find that plaintiff's counsel unreasonably or
17 vexatiously multiplied the proceedings in this litigation.  While
18 plaintiff's counsel's arguments were ultimately unpersuasive, the
19 court does not find them to be so patently frivolous as to
20 evidence subjective bad faith.  Accordingly, defendant MetLife's
21 motion for fees and costs is DENIED.

22                          **CONCLUSION**

23     For the foregoing reasons, defendants American Airlines and
24 MetLife's motions for summary judgment are GRANTED.  Defendant
25 MetLife's motion for attorney fees is DENIED.  The Clerk of Court
26 is directed to close this case.

27 /////

28 /////

19

1      IT IS SO ORDERED.

2   DATED: August 24, 2009.

3                                    _____

4                                    FRANK C. DAMRELL, JR.
                                     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28